Your Honor, the first case of the morning call, People v. Robert Smith, on behalf of Mr. Smith, we have Nina Aiken, on behalf of People, Ms. Diane Campbell. Ms. Aiken. May it please the Court, my name is Yasmin Aiken, on behalf of the appellant, Robert Smith. For purposes of this argument, I hope to discuss the first argument and the three errors raised there, because they go to the disputed issue in this case of identification. Before you get started, Ms. Aiken, you did file a motion for leave to cite additional authority? Yes, Your Honor, and I just want you to know that that was granted. Thank you, Your Honor. I would also like to start by addressing generally this Court's order about how these errors are reversible error, given the evidence arguably supporting guilt under an accountability theory. Mr. Smith's defense at trial was that he was not involved in the offense at all, either as the principal or under a theory of accountability. Instead, his theory was that James Charleston was the one involved and was trying to frame Mr. Smith for it. In fact, Mr. Smith has maintained his innocence of these offenses. How did accountability come along, just out of curiosity, when it wasn't really an issue of charge? What happened was, as the trial proceeded, evidence was presented that there was a second shooter in the car from where the shooting occurred. That is why the state asked for accountability instructions, because they didn't want the jury to be misled into thinking that if they didn't prove that Mr. Smith, based on their theory, was the one who actually fired the fatal shot, the other person would still be responsible for that other person's actions. To evaluate whether these errors were prejudicial under a harmless error analysis, there are three ways. One, we can focus on the error and whether it could have contributed to the conviction, examine the other properly admitted evidence to see if it overwhelmingly supported the conviction, or look at whether the improperly admitted evidence is cumulative or duplicative of properly admitted evidence. Now, in this case, I will argue that as to Part 1, the three errors all unjustifiably linked Mr. Smith to the crimes and in that way contributed to his convictions. Now, as to the Part 2, the properly admitted identification evidence was as follows. Geno Adams testified, and he was in the passenger seat of the deceased car, and he couldn't identify the shooter, even though he was in the best position to do so, because the shooter's car pulled up right next to him. He said he looked over, he saw the person with the gun shooting into the car, and he could not identify him. Another piece of identification evidence was Larry Bones' identification of Smith as being one of the shooters. He was the backseat passenger behind the driver, and he also testified that Mr. Smith participated in a speedway shooting a week earlier, and there was ballistic evidence showing that the same gun that was used both there and in the shooting in this case. But his credibility was in question. First of all, he was not in a good position to identify the shooter. Why is his position any less than Mr. Adams? Because he is in the backseat on the driver's side. So if you think of it, and the white car pulls up right next to the passenger side. He's looking at an angle, I guess, you know, through the seat and through the window. And even his testimony actually doesn't support the conclusion that he was in a good position to do so. Gino Adams actually testified that Larry Bones saw a white car from behind him through, I guess, the side rearview mirror must have been. And he said to Gino Adams, who is this in the white car? Then the only other thing Larry Bones said was he was, when the white car pulled up, he was actually looking down. He looked up. He saw a gun. The shooting started, and he had seconds to identify the shooter. So he's in a worse position to do so, and really the circumstances don't show. But isn't that credibility for the trial court, the jury, to decide? It is credibility. For what credibility? Right, but the errors here go to the identification evidence. This isn't a sufficiency of the evidence argument. We're seeing are these errors prejudicial? And when you look, so it's a different standard. With a sufficiency of the evidence standard, you're looking at the state in the light most favorable of the state. So all inferences, all factual disputes is credibility. We just say the jury made those determinations, and looking at the evidence of the light most favorable of the state, they made those determinations and found the defendant guilty. This is did the errors, in terms of deciding whether the errors are prejudicial, you have to look at the strength of the evidence. Is it overwhelming evidence? Well, no, it's not overwhelming because there's credibility problems with their main identification witnesses. If credibility is at issue, that's not overwhelming. And if you look at a harmless error analysis and lingering what the court said is, when you're deciding prejudice, unlike sufficiency of the evidence, you don't decide all factual ambiguities against the defendant. It's not the same. So we're looking at really kind of the quality of this evidence, and the quality of Larry Bowen's identification was not good. It's certainly not overwhelming. I wouldn't even say it's strong, but it's certainly not overwhelming. And as the state described him, and he doesn't identify Smith immediately after the shooting, even though he's given two opportunities to do so. And even the state described him as a convicted felon currently on parole who delayed two weeks before identifying Smith. And then after the shooting, he had reasons to curry favor with the state, since at the time of the shooting, he had a heroin that he admittedly said he was intending to sell at the time, even though he was only out on parole for two weeks. And in fact, he talked to his attorney before he talked to the police, and then he said, oh, by the way, it was Robert Smith. Again, the jurors heard this bias, this cross-examination of this bias of the witness. Isn't it for the court, the juror, the trier's back to make a determination as to whether or not he was telling the truth? But that's the sufficiency of the evidence argument, Your Honor. That's when you say, yes, it's the jury's role, and we have to assume that in the light most favorable of the state, they resolved his issues of credibility against my client. That's not a harmless error analysis. Harmless error is different. There were a lot of credibility problems with his testimony, and we can't presume that the jury, absent these errors, would have resolved them against the defendant. You just don't resolve all these sexual ambiguities against the defendant. It has to be overwhelming evidence against him, and this is not just sufficient to convict. You can have sufficient to convict and still have harmful prejudicial error. And then Larry Bowen also testified that he actually saw Smith at the Speedway. But the first time he ever mentioned this was at trial, and by that time, he clearly knew the state's theory of the case and the significance of that shooting to the state. There's no corroboration that Bowen was at the Speedway, even though there's surveillance video of it there. And if he had personal knowledge of the incidents, he actually could have testified to the events on the video. I mean, I raise an issue that Detective Holman, who wasn't there, improperly identified Smith on the video. But when you think about it, the state's best witness to tell the jury that that's Robert Smith on the video is Larry Bowen. He was there, but why didn't the state do that? I would say that there's a question as to whether he was really there. And I think what's really telling here is that if you look at the state's closing arguments, they distance themselves from Bowen. In fact, the state's opening closing argument, they don't even mention his name. They say this is, you know, just look at the surveillance video. That's Robert Smith on that video. Well, the only one who testified to that other than Bowen was Detective Holman. So clearly they're trying to use the weight of his authority to say this is Robert Smith. And they're identifying Robert Smith by the way he was dressed as opposed to any other features on that particular video? That's right, Your Honor. And I guess what's interesting about that is the state actually, before they present the Speedway surveillance video, they present this very clear video of when Detective Holman meets Robert Smith at the hospital as he arrived because his brother-in-law was shot. And you can see exactly what Smith is wearing. The jury saw. I mean, and it's a white tank top. It's nothing distinguishable. There's nothing on it that, you know. Sounds coincidental though, isn't it? Pardon me? That he's dressed exactly the same way as the person depicted in the Speedway video? Well, if he is dressed exactly the same way, the jury could have seen that as well. And it was for the jury to determine. If that person with the white tank top, I mean, it's not a distinguishable shirt. There could be other people with a white tank top. I mean, it was established it was a hot evening. So it was for the jury to determine, was this person in the white tank top Robert Smith? And again, I would also say that as far as Bone's testimony in rebuttal, the state actually told the jury, you don't forget about Larry Bone. You don't even have to consider Larry Bone because we have CSI. And the CSI is the Speedway surveillance video where the officer identifies Smith improperly. And that's revenge, and that's motive, which is another error that occurred in this case. And so all you have to look at is that revenge video and our ballistics evidence, and that's how it's Robert Smith. Does our white-shirted male have a gun in his hand in the Speedway video? The white-shirted male does have a gun in his hand, yes, yes. And again, but that was for the jury to decide whether that was Robert Smith with the gun, and with the gun that they are saying is also connected to this offense. I mean, because he denied, I mean, I think that's an important point, too. When he denied to Detective Holman that he was at the Speedway that night. So this, again, was another credibility issue for the jury to. Well, he didn't deny it. What he said is that he was somewhere else. He was never, I don't believe, asked about being at the Speedway when he was interviewed at the hospital. My recollection, Your Honor, is that Detective Holman testified that he gave a very specific, that Smith told him he was at a bowling alley, that he left the bowling alley, that he heard about the shooting and that he went directly to the hospital, and that he was never at the Speedway that night. I mean, that's my recollection of it. Okay. Does Mr. Smith look anything like Mr. Charleston? If that's first name or last name, I'm not sure. I mean, is that an issue in this case? There was no description of Mr. Charleston, so I wouldn't know how he looked. I guess, I'm sorry, the record doesn't show how he looks. So in that regard as well, so the other piece of identification evidence is James Charleston's testimony that Mr. Smith gave him the gun. He's impeached by a prior inconsistent statement that Mr. Smith didn't give him the gun, that the gun was his. And, again, that's another error involves the fact that counsel should have been able to use that as substantive evidence. What difference would it have made to the trier of fact were it used as substantive evidence or used as impeachment? Didn't counsel impeach him line by line with that statement? I mean, he went through that statement line by line by line. He basically put the entire statement in, didn't he? He did, Your Honor, but here's the difference that it would have made. You know, it's described in Zurita. If his defense theory is it wasn't Smith, it was Charleston, he is unable to, he impeached him, but in closing, he's unable to argue in support of that defense theory. You can look at this statement as equal as his testimony. So you can either decide is his testimony true where he basically received his Resburg case with the potential of 6 to 30 years in prison, and was dismissed in exchange for that testimony, or was his statement true where he came to defense counsel's office, he admitted voluntarily, wrote out the statement, the statement describes why he voted. But in closing argument, in closing argument, the defense attorney reviewed that statement. Again, basically line for line in closing argument, didn't he? Right. So how would it be any different? It would have been different if he could have also pulled the instruction that says you can consider this as substantive evidence and said that to the jury. Do you think the jury knows the difference between substantive evidence and hearing it verbatim word for word upon impeachment? I think they would have understood it much better if he could have used an instruction to explain to them and say, you're going to get an instruction that this statement here is just as equal, is equally weighty or is equal to his testimony, and you decide which one's true. Not that this statement makes him a liar or this statement is inconsistent. And I do think, too, that had it been admitted as substantive evidence, why wouldn't it go back to the jury? Well, didn't the state want to allow it to go back to the jury with some redactions, and the defense didn't want that? I don't recall that, Your Honor. To me, from my recollection, the state argued against this on the wrong basis, and that being that it was not based on his personal knowledge. Would this have been any different? Is this any different, the error, in light of the fact that there was an accountability instruction given? I guess I'm going to have to try. If the theory is, I don't understand how the accountability comes into play in that regard, I guess. If the theory is that James Charleston and Mr. Smith were working together, is that why? I mean, if the theory is accountability, would the same rules apply with respect to substantive evidence? That coming in as substantive or coming in as impeachment? I guess I'm missing the connection, but I think the same rules would apply. Yeah, I guess I don't think that it would make a difference if it was under accountability. All right, if we get to the statement and the statute that allows certain statements to be used as substantive evidence, and the statement talks about whether it narrates, describes, explains an event or condition. Under your theory, what is the event that Mr. Charleston would have been explaining or narrating in his written statement to a defense attorney? The event is, first, why he falsely implicated to the police. Okay, the event is just implication. Why is that an event that has anything to do with this case? Isn't that just purely impeachable, why I lied on a – I'm either lying now or I lied then? No, because – well, first of all, his testimony at his trial is he – Smith gave him the gun. Right, which was his testimony to the police. Right. The statement – the prior inconsistent statement is the gun is mine and Mr. Smith didn't give it to me. Those are – that narrates an event that he has personal knowledge of. Okay, but you started to say that he – the event is him telling why he's changed his mind? That's part of it as well because I – the personal knowledge requirement is, as it's just been recently found in Simpson, is how you perceive if the person perceived an event. Well, Simpson talks about I can perceive you telling me whatever. That's not my personal knowledge of the event. Right, but Simpson is the defendant told me he did it and you weren't even there. He was there when the police were questioning him. When he implicated Smith, he was there, right? So he's perceiving this event of why am I falsely accusing Smith? I'm falsely accusing Smith because personally the officers threatened me to charge me with murder. Personally, I was high and I was a drug addict and I didn't want to go back to jail. I mean, these are all facts within his personal knowledge, right? I mean, I think. But what's the event that makes this relevant to this trial as opposed to just pure and simple impeachment that you said something different on another occasion? For example, if Mr. Charleston had been the other guy, the third guy in the white car, that's personal knowledge of an event. What I guess what I'm trying to ask you is where do we draw the line between all impeachment can be used as substantive evidence and that which is just should be relegated to just impeachment? I guess if he would have written in that statement, I falsely implicated Smith. And I did it because, you know, I don't like him and I, you know, I want to see him go. At the time. What's the difference between that and what Mr. Smith said as to why he apparently changed his story? Because I think this he because it's not that he's not just giving reasons for why to to anybody. He's giving reasons for why. So do we draw the line as to who you said that you're saying to? Is that the critical trigger? But it's not that he's saying he is not saying hearsay to anyone. He is saying I talk directly to police. And this this was our conversation. And these are the things that happened to me that made me falsely implicate Smith. I was there one. I mean, at what at what point? How far away from the original event do we allow hearsay to be substantive evidence? So the distinction I want to draw is true is if he says, OK, I have personal knowledge. See that gun? I bought that in March and I have no idea how it got out from the rafters of somebody's basement. That is personal knowledge. Right. That's an event. Right. And it's arguably relevant because that's the gun. Yeah. Right. But the other things that he said simply go to his impeachment, I think. OK. And I want you to show me where I'm wrong. Yeah. And I guess to me, I guess we disagree in the sense that what I'm saying is I think that you can't go that far. You can't go that far to say the event is his interrogation by the police. That's the event. And he is describing the circumstances of his interrogation by the police that he has personal knowledge of. And that can be substantive evidence. That's my position. So your analysis would be any time you have personal knowledge of something, even though it's hearsay, it now comes in as substantive evidence. I'm wondering how how that I mean, it's it's hearsay abroad because prior inconsistent statements are hearsay. But then they fall under the requirements of the statute. They're great. But what they fall under the statute is how broadly we're going to explain what is an event or a condition. And I guess I don't have I don't think it's problematic to read it broadly because the statute you can read the statute pretty literally and apply it. And you can say he had personal knowledge. I don't think that it's problematic at all to read it broadly like that. So just briefly, just briefly, then whether or not you're saying that it is reversible error because of the fact that. They didn't allow it to be used as substantive evidence, correct? Yes. Yes, I am. OK, so it's not harmless there. No, it's not harmless. In fact, accountability is raised. Does that switch it to harmless error and not reversible error? And again, I guess I'm missing the connection there because I said, are you saying that if accountability because James Charleston may have been involved in the incident as well? And so I guess I guess if you could explain to me the connection between this prior inconsistent statement and the accountability theory, because because there's just no evidence that James Charleston and Robert Smith were acting in concert as to this at all. And so James Charleston provides, you know, the biggest, the most direct link to Mr. Smith and this this gun. So absolutely, it was very important that council be able to use this as substantive evidence to refute that link and to support his theory that no, Robert Smith didn't do this. James Charleston did this. OK, thank you. I'll have an opportunity in rebuttal. OK, thank you. Thank you. Miss Campbell. Good morning, Your Honors. I think Justice Jorgensen, she's done a marvelous job on articulating that part of Charleston's statement. So I'll just make a couple of brief comments. Justice Shostak, you asked about whether the thought about offering a redacted statement. The state did suggest that that was offer was not taken up. And one of the factors was that they offered a redacted statement back to the jury. They had suggested that the offering the entire statement was inappropriate. They suggested, you know, perhaps if you want this in, we could do some sort of redacted. There was never any. Nobody ever took that up and no one pursued that. So there was no redacted. But that was a suggested statement, which says that it would have been if it the offer was to redact the statement and allow it to be introduced as substantive. No, I mean, the state go back to the jury. It doesn't go back, but if you were going to, you would redact it. And were the redactions ever? No, it was just the word redacted statement. There was no pursuit of that at all. But one of the things that and I did not articulate this in my brief, so this is also my fault. It's not just Charleston's statement because we also have the statements of Cynthia Mendez, who is the defendant's mom. And she also states that the defendant came over the day after Taylor's shooting, brought the gun, gave it to Charleston. She's the one that wrapped it in the towel, put it in her purse, and then they transport it to Grandma's house and hide it in the rafters in the basement. So it's not just Charleston saying, you know, this is my gun. Cynthia Mendez, the defendant's own mom, also says that defendant brought the gun over. And regarding his statement used as either impeachment or substantive, I agree that it is properly classified as impeachment. But even had it been substantively admitted, it would not have created any sort of reasonable doubt or aided the defendant's case because his statement is that he bought the gun from some sort of crackhead on the street in March. There's no explanation then of how, you know, if the gun is in his possession or in Grandma's rafters. You know, that's not the touchstone as to whether a crazy statement is not there's no exception under the statute to say this doesn't make any sense. Therefore, even if it fits the requirements, it doesn't come in. Well, I mean, we don't have to believe his statement. If we could only believe the statements that we believed, it would be a short trial. That's true. My point is that if it was admitted as substantive and then used as evidence that perhaps he was, you know, involved or they're trying to blame him or he didn't, or the defendant, you know, didn't bring the gun, you know, the morning after, that's not a credible claim. I mean, it's not going to aid the defendant's case by creating some sort of reasonable doubt that it was him. And I'm going to go over some of the facts now that show that. What about counsel's argument that this is not a sufficiency issue? This is, if you take that statement, the remaining evidence has to be overwhelming. Where is there overwhelming evidence in this case? OK, I'm going to start for a couple of spots. Referring first to the Speedway video, what you see there is the white automobile with a gentleman in the white shirt by gas pump number three where the bullet is found from the gun. We then have defendant's denial that he was, I believe he said he was, you know, at the tavern. He, I think, said he wasn't at the Speedway. Nonetheless, he shows up at the hospital with Huli, who was shot at the Speedway. He's shown clearly in the emergency room video. The aid to that is you see the defendant's appearance that night as Officer Holman would have seen him later when he talks to him in person at the hospital. It shows the white T-shirt. Again, it counters his argument that, you know, he wasn't there because he's arrived with Huli who was shot there at the hospital. The same gun is fired from the white Grand Prix, which is, you know, matching, ironically enough. The white car at the Speedway. The white Grand Prix is Cynthia Mendez, the defendant's mom's car. The defendant drives it. He admitted he was driving that white Grand Prix the night of the Speedway incident. Okay, so we've got the white car, which pulls up next to Taylor's car. So we know this isn't, you know, an accidental shooting, you know, that goes to the motive. They've stopped, you know, feet away from the car. It's not an accidental shooting because it's, you know, not hijinks on the Fourth of July where you shoot into the air, you know, and the bullet falls down. No, you have them. There are nine bullets that come out of the car. From two different guns? Correct. Four and three of these are found, I think it's three bullets, are found in Taylor's car and they are shot from the gun. The bullet which comes from the autopsy out of Taylor's skull cannot be matched to the gun specifically, but it is the same. It's consistent with firing from the gun. The shots are into the windows, so, you know, they're not trying to just scare somebody. They are intending to shoot and kill people on this. You know, Taylor was unfortunate enough to be involved. I think what we're driving at, though, is where's the overwhelming evidence that this defendant did? We'll give you that somebody killed Taylor and it was an intentional event. And then you have Larry Bones' testimony that the defendant is the driver of that white car and he shot. Isn't Larry Bones' testimony questionable? I don't think so. He explained why he delayed identifying the defendant. He is seated in the back seat and he says that he is looking out the window and watching. That's why. And Adam's testimony is that, you know, he and the driver were looking ahead. You know, if he glances over, you know, he said he saw the gun. That's not unusual. If you're that close to a gun, you're going to focus on the gun, not necessarily see the person holding it. But Bones was very clear that it was the defendant who was shooting the gun. Well, he was very clear two weeks later. Why couldn't he have been clear? Well, he had some illegal substances with him at the time of the shooting, so he's concealing that in a bush. So he's consulting with his attorney before he goes and identifies the defendant to the police. He ultimately did serve that term of parole, didn't he? I believe he got a violation and then went back for four and a half or five months on that. And then we have the gun, which we know, you know, was used and was at the Speedway, is then brought the day after the shooting to the house where Cynthia Mendez and it is Mr. Charleston. I can't remember his first name, but Charleston live. Defendant brings the gun. He gives it to Charleston. Cynthia Mendez wraps it up in a towel. The next day they put it in her purse and they take it to grandma's house where it's concealed in the rafters. Charleston is suddenly picked up by the police and he says, you know, oh, that gun. It's in my grandma's rafters and then tells them where to go and find it. And, you know, the ballistics show that it was the gun, you know, that was at the Speedway. And then again at the Taylor shooting and that three of the bullets that are in the Taylor car came were fired from that gun. How was that testimony not substantive evidence versus something that should have been allowed in this impeachment? I believe Justice Jorgensen has it straight that it was. It's the bounds of impeachment and what is the actual event? And the trial judge's comment was that what he's doing is denying things. He's not testifying about an event. So I agree that the trial court had that right. It was impeachment. You know, as I said, you know, if it was in some way air, it should be considered. It's harmless air because this statement, you know, had it been admitted substantively, was so ludicrous that it would not have aided the defendant's case and created sort of reasonable doubt. Again, we've got the defendant or we've got the white car with the guy in the white shirt at the Speedway with the bullets from the gun that killed Taylor. Oh, the gun. And then we have the defendant in the white shirt at the hospital delivering Hooli. And then we have the white car, which is the Grand Prix, which the defendant admitted he was driving the night of the Speedway is at the Taylor shooting. Is the mother's car? Yeah, it's mom's car. They actually find, like, I think a bullet that had been fired or dented into the door. So, no, they don't find it. There's a that's true. It's missing, but Mr. Charleston volunteered that he'd taken the panel out and there's no dirt in there. So they conclude that someone has previously removed that. Yeah, there's evidence that there was. Let me ask you this. Why is a Charleston statement purely about take all the other stuff out and say I bought this gun in March? I had it in my possession. I wrapped it up, put it in the rafters. Don't know how it got out of there. If you tell me it was used in an offense. Why isn't that an event of which Charleston has personal knowledge? It certainly is relevant because the gun is the keystone of the state's case. If we agree that bone is perhaps not the most credible witness. So why isn't that part of his statement to be used substantively? Well, I believe that the event or the personal knowledge should be towards the actual crime that is committed. And in this case, the vast majority of the statement isn't dealing. I agree with that. But it's dealing with if you're focusing on that as the event. It's my gun as the personal knowledge that he's talking about. The vast majority of that statement did not contain that. That was a couple lines. That I think is why the state had said. Sending it back is not the same thing as agreeing it can be used substantively. I'm asking you, tell me why that portion of the statement. I bought the gun in March from a guy on the street, yada, yada. Why should that not have been used substantively? You said, well, because that event is not the crime. Anything else? Again, I think that's the main portion of it. Is there any authority that says that it has to explain, describe, or narrate the event that is the subject of the complaint? I don't think there is. And then would it have been any different, I believe the statement says something like, I told police I had a gun someone had thrown to me, but I already had a .38. If the statement had been, I told the police I had a gun Smith had thrown to me, would that have made it any different? I mean, defendant's whole theory of the case is that he was never there and never involved. So saying that Smith tossed him a gun is irrelevant because he was never there, never involved, never had a gun that was used. So, you know, if he is saying, you know, I was never there, then, you know, I think, you know, under your scenario, no, it doesn't change. And again, we also have Cynthia Mendez's testimony that the defendant brought the gun over the day after the shooting. Would the fact that whether this statement came in as substantive evidence or whether it came in as impeachment, the way it was presented at trial for cross examination and to the jury, do you believe it would have made a difference in the outcome? No. As you pointed out, it was read line by line. The jury heard, you know, what what the substance really of the statement was. Although, you know, we all say that, you know, we believe that they they follow their instructions. It was effectively sort of before them. It was, I believe, a credibility problem. As I said, the substance of the statement, you know, if it had gone in substantively was so inherently incredible that it wouldn't have created a reasonable doubt, which is, you know, her talk about whether it's reversible error. You know, that's not something that's going to aid the defendant's case. Can I briefly address some of the jury instruction? OK. Independence brief. She nicely sets them out all three on pages thirty eight and thirty nine. In my brief, I page, I believe, twenty seven. I refer to the Fernandez case. That's a common design case. That's what we have here is the accountability came in where the second arm is coming out and shooting and they find the two different types of shell casings. And the defendant was guilty under accountability because he has piloted the car to the position next to it. They're both unloading with the guns shooting into the opposing car. The if you have to read the three instructions together and on page thirty eight for the first degree murder and accountability. Second propositions, the defendant or one for whose conduct is the least fully responsible did so. He intended to kill or do great bodily harm to Philip Taylor or another. So that, again, is sort of a combination of common design and transferred intent. There's no evidence that Taylor himself was specifically targeted as part of the revenge or motivation. That there's no evidence he was at the speedway. He just happened to be in the car a week later with Adams and Bone. And then we have the legal responsibility, which is conduct of another person. So that's the common design portion, which is in Fernandez. And then in the third instruction, which defense counsel has argued sort of takes it into a felony murder. I don't believe it does so because that has been modified to specifically say that can combine to do an unlawful act such as committed first degree murder. So that takes away the whole felony murder thing where which the essence of is that we were doing something else and somebody got killed. So we're responsible for that murder. This is they were always intending to kill somebody. And they just accidentally killed Philip Taylor because he's sitting in the car rather than Bone or Adams. And I did most of my prep last night for this. So Fernandez, I cite in my brief, there is a recent court case or case that was state filed a motion to publish the decision in Salazar. And that is sort of an update on Fernandez. And it talks about some of the cases. But substantively, what is in Fernandez is reinforced in Salazar. And the site for that is 2014 ILAP and then 2D 130047. Are there, let me check. Any other questions, Justice Hutchins? No, thank you. No, I'm good. I have one additional question. As you know, People v. Simpson came out just a few weeks ago from the Illinois Supreme Court. I'd give you a chance if you want to make any comments about that case. I have not studied the Simpson in preparation for this case. I'd be happy to look at it. That's okay. Thank you. Thank you. Please take your rebuttal. I just would like to, I think, confine my rebuttal to how obviously we have a disagreement as to whether this evidence was overwhelming or prejudicial, that the errors were prejudicial. First of all, the reference to Ms. Mendez saying that she also said that Robert Smith brought the gun over to the house, she did not testify to that. She testified that she did not see him bring the gun to the house. There is testimony from Detective Rivera who interviewed her that she told him that. But even if you look at James Charleston's testimony, he never testifies that Cynthia Mendez also saw Robert Smith bring the gun into the house at all. In fact, the whole issue there is whether she saw Mr. Charleston pointing the gun at her or whether he showed it to her under the bed, which is what he said he did. So there's just not evidence that she said that. But she does have some interaction with the gun. That's not disputed, correct? Right, afterwards, in terms of taking it over to Ms. Brown's house, she does. The state refers to the Speedway video. One of the issues obviously goes to that, and that determining whether Mr. Smith was involved in that incident at all. The jury is actually under the IPI for other crimes evidence. The jury is instructed that they are to decide whether or not the defendant was involved in those offenses. And in this case, another error went exactly to that. Detective Holman made that decision for them. And there was no objection at the time, correct? No, Your Honor, and I did raise it as plain error because not only is it an error that affects this case, because I would say the evidence on identification is closely balanced, it's an error that compromises the integrity of the trial, because you have a detective who is making a credibility determination, a crucial credibility determination for this jury. And I would actually say that... But the jury had the opportunity to view it, too, did they not? The jury viewed it during trial, but I actually... What happened during closing argument, again, when the state said, forget about Larry Bond, you have the surveillance video, that's the defendant in it, and then the jury actually asked to see some videos, but then they returned their verdict before watching it. And I would suggest to you that they did so because they decided, you know what, we don't have to see that. That's right, that detective told us. That's pure speculation, though. We have no idea. If we could ever figure out why juries do what they do. Although under Thompson there is language that the jury, when an officer improperly invades the province on a credibility issue like that, then the jury, he has the power of authority behind him, and it's very hard for the jury to make that determination against that officer. But the jury did see the video. They did see the video. They did see the video, yes, Your Honor. Wait a minute. Actually, to be perfectly clear, it's the state that keeps referring to the defendant. Do you see the defendant in the video? The police officer doesn't say that's the defendant. He just says yes, no, yes, no, right? So it's a proper question. Well, the state stops the video at three specific spots, and then he identifies the defendant as being in those still photographs, still images from the video. Okay. Then Ms. Campbell refers to the fact that, you know, Mr. Smith showed up at the hospital with Hewley there. But interestingly, as, you know, Mr. Smith denied being at Speedway, and, you know, there's no evidence that he did bring him to the hospital. Detective Holman just says he meets Smith at the hospital. I mean, that would have been easy to show. Had Smith actually been the one that brought Hewley to the hospital, he probably refuted his statement that he was never at the Speedway. But there's no evidence of that. Then Ms. Campbell talks about the fact that the same gun was involved in both of these incidents. Well, we still have to link it to Mr. Smith. Again, that goes to James Charlson's statement. That was why it was important for them to be able to use at least the portion of the statement that the gun was not given to him by Smith and that it was his gun. That was offered, though, wasn't it? At the trial court level, a redacted statement was offered, and the defense never took the state up on it. A redacted statement for purposes of impeachment. Not a redacted statement for purposes of substantive evidence. I don't recall that it was ever going to be allowed as substantive evidence. Well, if it would have gone back to the jury, they would have read it, redacted, and as you said, at least that portion. But how would it go back to the jury as impeachment evidence? I mean, I think the state would have an objection to say this isn't substantive evidence. But they offered it. They offered it. They offered it as redacted during the time that they were having the discussion on this issue as to what he could impeach him with. Well, if we're going to speculate, then maybe if it went back, they may have given the instruction on substantive evidence, no? That they would have found it to be substantive evidence? Well, then that shows the harm of it not going back. And I guess if defense counsel, you know. There may be a post-conviction petition with ineffective assistance of counsel, would be the way to go. And ineffective assistance, apparently, of a public counsel then for not raising it that way. And that's fine. Oh, no. Public counsel is doing a stunning job. No, no. And that's fine. I'd be happy to advise them of that. And then I just want to, one last thing is that Ms. Campbell keeps, has talked about how it was not an accidental shooting and that there was motive evidence showing that there was a reason for the shooting. Well, again, another of my issues goes to the fact that that motive was completely unsupported by any evidence. According to the state, Mr. Smith would have a motive to shoot at anybody at the speedway that night. And then that becomes propensity evidence, which is exactly the reason other crimes evidence is so prejudicial. So because the issue in this case was identification, Your Honor, because the evidence of identification was not overwhelming, because the three errors in this case went to identification, these errors individually or cumulatively, and I will say that I have an argument that it could be considered cumulatively as well, demands that Mr. Smith's convictions be reversed and remanded for a new trial. I got one last question for you. Oh, sure. You said initially in your reply here at rebuttal that Cynthia Mendez at trial talked about wrapping the gun, putting it in a bag, and bringing it to, I can't remember her name. Ms. Brown. Ms. Brown House. Yes. Now, but she had previously told the police officer that, in fact, the defendant had brought it over. Correct? In, yes, she told the police officer that. The defendant had brought the gun. Right. And she had seen him that day. So this is my question to you. Why shouldn't that statement come in as substantive evidence? It's a prior and consistent statement. It goes to the heart of the crime. It's got to do with the gun. Are you saying that, well, I guess because it would have to be, if I can look quickly at the requirements for 113-10. Right, she has to acknowledge it or it has to be signed, recorded, et cetera. But I'm looking at the substance of it. If you're saying that Charleston's testimony should come in because it explains the gun and it explains the circumstances why he might have told a different story, why wouldn't Cynthia Mendez's statement come in, assuming that she did acknowledge saying that to the police officer? I mean, what's the difference? The difference is that the other evidence shows that she didn't have personal knowledge of him bringing the gun into the house. I mean, the other evidence actually contradicts it. And that doesn't make it inconsistent, I guess. In fact, the state didn't even really rely on that one statement she made to the police because I think it was pretty much accepted that if you believe James Charleston's testimony, if the state wants you to believe James Charleston's testimony. Right. All I'm saying is what's the difference between Charleston's statement and her statement? Okay. And when you're talking about Charleston's statement, his prior inconsistent statement that Smith didn't give him the gun. Right. Because he testifies at trial that he did give me the gun. She makes a prior inconsistent statement that the defendant was there, gave the gun to Charleston, and then at trial she says, no, I don't remember that. She doesn't say she doesn't remember it. She says, I didn't see that. I didn't see that, right. But she did see it when she told the police officer that. So my question is, this is my issue. How far do we go in saying that any inconsistent statement now becomes usable as a substantive piece of evidence? And I guess I would have to say, you know, looking at the requirements, and the biggest requirement is, does it narrate an event of which she has personal knowledge? So I guess I really don't want to concede this because I don't think the reality of it is. I don't think that she saw that all the other testimony shows that she didn't see him bring that in. And I think that the state never relied on that, certainly at trial. That was not one of their big points. But, you know, I guess if she has personal knowledge, if you can show she has personal knowledge that he brought it in, I guess they could have used it for substantive evidence, but they certainly didn't. They didn't. And that's one other last thing is we have to be concerned with what this jury was, not what evidence and how we might have presented it to another jury and would that have been fair. Was this trial fair with how they presented this evidence? And our contention is it wasn't fair. This wasn't a fair trial. And you can have an unfair trial and evidence sufficient to convict, and you should still reverse and remand for a new trial. Thank you, counsel. Ladies, thank you very much for your arguments this morning. I endorse also your commendation for counsel for her job. And we had a prolonged pre-briefing or briefing phase where we were trying to work with the counties to get the videos. Oh, yeah. And she was very courteous, very professional. And I'd like to thank her. Thank you, ladies. Very good job. To both of you, and I say this all the time, it's always so much easier when you have two professional lawyers appear before you and give very cogent, very great arguments, and we appreciate that from both of you. We will take this under consideration. We will render a decision in due course. In the meantime, court is adjourned for the day. Thank you very much.